UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                 :

PHILLIP ECHEVERRI,                     :

                          Plaintiff,     :

                                       :

              -against-            :

                                       :

THE NEW YORK CITY DEPARTMENT OF   :
SANITATION, et al.,                  :

                         Defendants, :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/03/2016

15 Civ. 80 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Phillip Echeverri brings this action against Defendants New York City Department of Sanitation ("DSNY") and Dr. Norman L. Maron ("Dr. Maron"), alleging that when Defendants found Plaintiff medically disqualified from employment as a Sanitation Worker with DSNY due to his low blood platelet count, they made an adverse employment decision against him on the basis of an actual and perceived disability. Plaintiff alleges that this adverse decision constituted a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), by DSNY and of the New York City Human Rights Law, NYC Admin. Code § 8-107 *et seq.* (the "NYCHRL"), by both Defendants. Defendants move for summary judgment, including on the ground that the DSNY is an improper defendant. Plaintiff asks that the City of New York (the "City") be substituted for DSNY, by either construing or amending the Complaint. For the following reasons, Defendants' motion for summary judgment is denied, and Plaintiff's application to substitute the City for DSNY is granted.

**BACKGROUND**

       The facts below are taken from the parties' submissions, resolving all factual disputes and making all inferences in favor of Plaintiff, the non-moving party, as required on a summary judgment motion.

## I.      The Position Sought by Plaintiff

Plaintiff took the civil service exam for appointment to the position of Sanitation Worker with DSNY.  The duties of a Sanitation Worker, as stated by the Notice of Examination for that civil service exam, include but are not limited to: "walking and/or standing for long periods of time; operating various types of [DSNY] equipment in all types of weather; pulling, dragging, lifting and carrying heavy and large objects, bags of garbage, cans, containers, bulk items and throwing or dumping them into a truck hopper or loading them onto a truck."  The job specifications for the position state that a Sanitation Worker "[u]nder direct supervision, performs the work and prepares and operates various types of equipment involved in street cleaning, waste collection, recycling collection, snow removal, encumbrance removal and waste disposal," and further states that typical tasks of a Sanitation Worker include "load[ing] and unload[ing] waste materials and bulk items; sweeping and cleaning city streets; participating in special cleaning and collection work details; inspecting and preparing department vehicles and equipment for operation; driving and/or operating department vehicles and equipment;" operating snow plows during winter months; removing snow and ice from city streets and roadways; spreading salt and sand; monitoring collected waste for hazardous or toxic materials; preparing necessary forms and reports; entering data and making log entries; mooring, shifting, securing and covering barges; and performing enforcement duties when so assigned.  Neither the Notice of Examination nor the job specifications state that any given Sanitation Worker will be required to perform all of these duties, or whether Sanitation Workers may be assigned work that includes some of these articulated duties but not others.

Both the Notice of Examination and the job specifications state that there are medical requirements for the position of Sanitation Worker, and the Notice of Examination states that

candidates "will be examined to determine whether you can perform the essential functions of the position of Sanitation Worker." Sanitation Workers also must pass a drug screening to receive an appointment and are subject to random drug tests for the duration of employment. Defendant Dr. Maron, the medical director of DSNY and its medical staff, reviews the medical files of pre-employment applicants. Dr. Maron, in reviewing these files, takes into account the tasks of a Sanitation Worker, including that they carry many pounds of weight, lift weight multiple times a day and climb off and on trucks. Dr. Maron also considers the conditions in which a Sanitation Worker performs these tasks, which include working in weather extremes such as snow, sleet and ice, and that Sanitation Workers are exposed to trauma in the course of performing these tasks. Sanitation Workers have a high rate of injury; the clinic operated by DSNY sees 150 patients per day.

The DSNY promulgates medical standards that were developed to assist examining physicians in determining the suitability of candidates to perform the tasks assigned to Sanitation Workers. These standards, according to their introduction, make recommendations regarding how much bodily impairment would preclude a candidate from safely performing the fundamental duties of a Sanitation Worker, taking into consideration the ADA. Some conditions are determined to be disqualifying. Others are potentially disqualifying depending on specified circumstances. Section I(2) of the DSNY medical standards states that individuals with hematologic disorders require medical clearance.

## II.    The Employment Decision Adverse to Plaintiff

In 2012, Plaintiff received his first notice to appear for pre-employment screening, but was not appointed to be a Sanitation Worker at that time. In June 2013, Plaintiff received his second notice to appear for pre-employment screening, but was not appointed to be a Sanitation

3

Worker at that time because felony charges against him for sale of a controlled substance were pending.  In June 2014, pursuant to a third notice, Plaintiff appeared for pre-employment screening, which included blood work.

In July 2014, Plaintiff received a letter from DSNY stating that Defendant Dr. Maron or his designee had reviewed Plaintiff's medical results and found abnormalities requiring hematology clearance and a doctor's letter addressing the cause and prescribed treatment.  The letter included lab results stating that Plaintiff's blood contained 88,000 platelets per microliter of blood, compared with a normal range of 140,000 to 400,000.  Plaintiff has a hematologic disorder related to this platelet count, called idiopathic thrombocytopenia pupora or immune thrombocytopenia pupora ("ITP").

Plaintiff saw two hematologists; the first hematologist noted that Plaintiff's ITP would put him at "a high risk of bleeding for his new job."  Plaintiff did not ask the first hematologist to submit a letter medically clearing him for the position of Sanitation Worker and, drawing all inferences in favor of the non-moving party, DSNY and Dr. Maron did not have or rely on the opinion of this hemotologist when they medically disqualified Plaintiff.

Plaintiff met several times with a second hematologist, Dr. Claudia Wilson.  She prescribed Plaintiff steroid medication for his condition, informed Plaintiff that his condition could lead to increased bleeding, and advised DSNY that Plaintiff would be monitored.  She wrote a letter to DSNY stating that Plaintiff has a low platelet count which appears to be ITP. "[H]e was placed on steroids and will be monitored.  He is cleared for the job with the Sanitation Department."

Dr. Maron testified at his deposition that Dr. Wilson's letter was not helpful to Plaintiff's employment application because people on steroids may require more medical attention for

injuries than people who are not, and because Dr. Maron believed the letter did not communicate recognition of the job duties.  Dr. Maron concluded that Plaintiff was medically disqualified from the job of Sanitation Worker because it entails exposure to significant trauma, and Plaintiff's condition and treatment exposed him to a risk of "bleeding out" and difficulty healing.  Plaintiff received a letter from DSNY dated July 25, 2014, stating that he was found to be medically not qualified for the position of Sanitation Worker because he had thrombocytopenia pupora.

Plaintiff lifts weights every other day, and does many pull-ups and push-ups.  Plaintiff did not know that he was suffering from ITP until he met with Dr. Wilson after the DSNY informed him of his low platelet count.

**III.      Plaintiff's Administrative Appeal, EEOC Action and the Notice of Right To Sue**

On or about August 22, 2014, Plaintiff appealed his medical disqualification to the New York City Civil Service Commission ("CSC").  Dr. Maron submitted a memorandum to the CSC explaining the basis for Plaintiff's medical disqualification from employment as a Sanitation Worker -- i.e., his blood condition, the increased risk of bleeding, and its impact on Plaintiff's ability to perform the job.  Specifically, Dr. Maron identified the risk of cuts and fractures and the resulting inability to lift, carry, push, pull, climb, shovel and sweep in slippery or windy weather conditions.  The CSC affirmed Plaintiff's medical disqualification.

Plaintiff filed a complaint with the EEOC on August 6, 2014, regarding his disqualification.  Plaintiff stated on his intake questionnaire that he had a disability, but denied that he used medications, medical equipment or anything else to lessen or eliminate the symptoms of his disability, even though Plaintiff does, at times, use medications and other methods (such as dietary changes) to mitigate the symptoms of his condition.  The EEOC issued a Notice of Dismissal and Rights, also called a Notice of Right to Sue, on September 10, 2014.  Plaintiff did

not receive this notice in September because the U.S. Post Office, on its own accord, was

marking his mail as return to sender.  Two attempts to deliver this notice were made -- the first

one postmarked mailed on September 11, 2014, and returned September 16, 2014; the second one

postmarked mailed on October 2, 2014, and returned on October 5, 2014.  Plaintiff states that he

subsequently received the notice in mid to late October.  Plaintiff commenced this action on

January 7, 2015.

**IV.      Plaintiff's Arrest in February 2015**

Plaintiff was arrested in February 2015 and charged with possession and intent to sell a

controlled substance and criminal possession of a controlled substance.  DSNY imposes a

probationary period of eighteen months for individuals hired as Sanitation Workers.  Violation of

DSNY policies prohibiting sale or use of controlled substances or failure to comply with

substance testing policies following arrests may result in suspension or termination.  At no point

was Plaintiff hired by DSNY or subject to these policies.

**<u>STANDARD</u>**

The standard for summary judgment is well established.  Summary judgment is

appropriate where the record before the court establishes that "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

The moving party bears the initial burden of informing the court of the basis for the

summary judgment motion and identifying those portions of the record that demonstrate the

absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex*

6

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.  *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 248.

## DISCUSSION

**I.     Substitution of DSNY for the City**

Plaintiff has named DSNY as a defendant in his action.  However, the New York City Charter provides that DSNY is immune from suits, and all suits against it must be brought against the City of New York.  *See* N.Y.C. Charter § 396.  Plaintiff asks that all claims be construed as against the City and DSNY substituted for the City here.  That motion is granted.

The City was on notice of Plaintiff's claims, as DSNY is represented here by New York City Corporation Counsel, which presumably would continue as counsel in this action to represent the City.  Defendants identify no prejudice the City would suffer by joining the action at this point.  In light of the Second Circuit's "strong preference for resolving disputes on the merits," *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation and internal quotation marks omitted), the City of New York is substituted for DSNY in this action, pursuant to the Court's power under Rule 21, Fed. R. Civ. P. ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *see also Burgis v. Dep't of Sanitation*, No. 13 Civ. 1011, 2014 WL 1303447, at *4-5 (S.D.N.Y. Mar. 31, 2014) (construing claims against the Department of Sanitation as against the City of New York); *Owens v. N.Y.C. Dep't of Sanitation*,

No. 11 Civ. 8297, 2013 WL 150245, at *5 (S.D.N.Y. Jan. 15, 2013) (finding that where claims were alleged against DSNY, "[i]f this Court were to construe Plaintiffs [sic] claim against the DSNY as a claim against the City of New York and Commissioner of the New York City Department of Sanitation, based on the facts alleged, the Court cannot conclude at this stage in the litigation that an amendment to state a claim would be futile").

## II.        Timeliness of Plaintiff's Action

Defendants contend that Plaintiff's action is time barred and that Plaintiff has failed to rebut a presumption that he received his Notice of Dismissal and Rights three days after it was mailed on September 11, 2014, and therefore failed to file his lawsuit within 90 days of receipt of the EEOC's Notice of Dismissal and Rights.  *See* 42 U.S.C. § 2000e-5(f)(1) ("[T]he Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved.").  This argument fails as Plaintiff has adduced evidence creating an issue of fact as to when he received the notice.

"The statute of limitations is . . . an affirmative defense . . . on which the defendant has the burden of proof."  *Bano v. Union Carbide Corp*., 361 F.3d 696, 710 (2d Cir. 2004) (internal citation omitted).  An issue of fact as to the timeliness of an action precludes summary judgment.  *See Katz v. Goodyear Tire & Rubber Co*., 737 F.2d 238, 242 n.2 (2d Cir. 1984) ("Where the statute of limitations operates as an affirmative defense . . . issues of fact as to the application of that defense must be submitted to the jury.").

The evidence raises a disputed issue of material fact as to when Plaintiff received the Notice of Dismissal and Rights.  Envelopes in the record show that the notices mailed to Plaintiff

on September 11 and October 2, 2015, were both returned to the EEOC.  Plaintiff testified that he did not receive this notice until at least mid-October.  Drawing all inferences in Plaintiff's favor, a reasonable jury could conclude that this is true, and that Plaintiff timely filed this suit on January 7, 2015.

Defendants argue that Plaintiff's testimony is not sufficiently credible to defeat summary judgment.  However, Defendant has the burden of proof on this issue, and "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (citing *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir. 1997)).  Therefore summary judgment on the ground of untimeliness is denied.

## III.       Summary Judgment on the Merits

Defendants' motion for summary judgment on the merits is denied because there exists a disputed issue of material fact as to whether Plaintiff can perform the essential functions of the Sanitation Worker position with or without reasonable accommodation.

Plaintiff's claims alleging discrimination under the ADA are subject on summary judgment to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) ("Claims alleging discrimination under the ADA are subject to the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*." (citing *McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009))).  Under this framework, the first step is that Plaintiff must establish a prima facie case of discrimination under the ADA.  *Davis*, 804 F.3d at 235.  The elements of a claim for discrimination under the ADA are that: (1) the employer is subject to the ADA; (2) Plaintiff is disabled within the meaning of the ADA or perceived to be so by her

9

employer; (3) Plaintiff was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) Plaintiff suffered an adverse employment action; and (5) the adverse action was imposed because of Plaintiff's disability, an element that is met by showing that the adverse employment action took place under circumstances giving rise to an inference of discrimination. *Davis*, 802 F.3d at 235 (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008)).

For the purposes of this motion, Defendants have conceded that DSNY, now the City, is subject to the ADA and NYCHRL; that Plaintiff possesses a perceived disability in his ITP; and that Plaintiff was disqualified from employment with DSNY. Defendants rest their motion on the argument that no reasonable jury could find that Plaintiff has shown that he is otherwise qualified to perform the essential functions of the Sanitation Worker job with or without reasonable accommodation.

Determining the essential functions of a job requires "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, at 140 (2d Cir. 1995)). Relevant factors include "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *Id.* (citing *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997)); see 29 C.F.R. § 1630.2(n) (2012) (defining "essential functions" and listing factors relevant to determination). "A court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." *Shannon v. New York City Transit Auth.*, 332 F.3d 95 (2d Cir.

10

2003) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998) (citation omitted)).  This judgment must be explained and supported by the record.  *See Stone*, 118 F.3d 92, 97 (2d Cir.1997).  Here the Notice of Examination delineates the tasks of the position as primarily lifting, loading, pushing and pulling, at times in slippery or hazardous conditions.

Plaintiff does not argue that an accommodation is necessary in order for him to perform the job of Sanitation Worker.  He asserts that he is able to perform the essential functions of the job without an accommodation.  He has adduced evidence that he could perform the functions of lifting, loading pushing and pulling.  Defendants never determined through a fitness test or otherwise that he could not, nor do they seem to dispute this issue.

The issue is not whether Plaintiff can lift, carry, push and load, rather whether he can do so safely -- i.e., without unreasonable risk to himself or others.  "A court necessarily must consider both the type of position for which the plaintiff claims to be otherwise qualified, and the consequences of a potential mishap."  *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998).  What may be a reasonable risk for one job may be unacceptable for another.  *Id.* ("What may be a reasonable risk for a postal worker . . . whose job generally does not pose great hazards to those who perform it or to the public they serve, is not necessarily a reasonable risk for a firefighter, whose job is defined at almost every turn by the potential for disaster to himself and others." (internal citation and quotation marks omitted)); *see, e.g.*, *Burton v. MTA*, 244 F. Supp. 2d 252 (S.D.N.Y. 2003) (Chin, J.) (for the job of a bus driver, a relatively small risk of stroke or catastrophic hemorrhage is unreasonable).

Plaintiff has made a prima facie showing that he can perform the job of Sanitation Worker reasonably safely.  The DSNY medical standards make recommendations regarding how much impairment would preclude a candidate from safely performing the fundamental duties of

Sanitation Worker.  The standards provide that hematologic disorders require medical clearance.

When DSNY determined that Plaintiff had a low platelet count, consistent with the DSNY

medical standards, they informed him that he required hematology clearance and a doctor's letter

addressing the cause of his condition and prescribed treatment.  He produced such a letter from a

hematologist whom he saw several times.  The letter stated that the cause of Plaintiff's condition

was idiopathic; that the prescribed treatment was steroids and monitoring; and that he was cleared

for the job.  The letter implies that Plaintiff's condition was not sufficiently serious as to be

disabling, and that when treated, the risks associated with the condition were minimized.

Drawing all inferences in favor of the moving party, the letter is sufficient for Plaintiff's prima

facie case.

    Defendants argue that the letter is unreliable, does not reference the functions of a

Sanitation Worker, and does not elaborate on how or why the hematologist reached her

conclusion.  These arguments are akin to credibility arguments and are not a basis for granting

summary judgment.  *See Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) ("A motion

for summary judgment may properly be granted -- and the grant of summary judgment may

properly be affirmed -- only where there is no genuine issue of material fact to be tried, and the

facts as to which there is no such issue warrant the entry of judgment for the moving party as a

matter of law.") (internal citation and quotation marks omitted).

    **A.     NYCHRL Claim**

    Because federal and state law create a floor and not a ceiling as to permissible claims of

discrimination under the NYCHRL, a separate analysis is required if a court finds that a

Plaintiff's claim fails under federal law.  *See Velazco v. Columbus Citizens Foundation*, 778 F.3d

409, 410-11 (2d Cir. 2015).  Here, however, where Defendants' motion fails under federal law, it

necessarily fails under the NYCHRL as well.  Like the "essential functions" requirement in federal law, the NYCHRL provides as an affirmative defense to a claim of disability discrimination "that the person aggrieved by the alleged discriminatory practice could not, with reasonable accommodation, satisfy the essential requisites of the job or enjoy the right or rights in question."  As discussed above, whether Plaintiff could satisfy the "essential requisites" of the job is a material disputed fact, as to which Plaintiff has made a prima facie case, and therefore the motion for summary judgment on Plaintiff's NYCHRL claims against Defendants is denied.

Defendants argue that they are entitled to summary judgment on the NYCHRL claim because Defendants had legitimate non-discriminatory reasons for denying Plaintiff employment, which Plaintiff failed to rebut.  This argument is misplaced.  These prongs of the *McDonnell Douglas* analysis are useful "[w]hen the reason given by the employer for the adverse employment action is unrelated to the employee's disability . . . . [but not w]hen the parties agree that the employer complains of conduct that is the direct result of the employee's disability." *McMillan v. City of New York*, 711 F.3d 120, 129 (2d Cir. 2013).  Under the broader standard of the NYCHRL, summary judgment is denied.  *See Hernandez v. PFIP, LLC*, No. 14 Civ. 5069, 2015 WL 7758875, at *5 (S.D.N.Y. Dec. 1, 2015) ("The NYCHRL offers broader protection.").

**IV.      Damages After Plaintiff's Arrest**

Defendants move that any damages should be cut off after February 4, 2015 -- the date of Plaintiff's arrest on felony drug charges.  Defendants contend that, as this arrest would have led to Plaintiff's termination had he been employed by DSNY, it should be seen as cabining his available relief.  However, the sole case that Defendants cite to support this motion, *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), is inapposite, as it deals with limiting relief on the basis of after-acquired evidence where the plaintiff in question was actually an

employee of the defendant subject to its rules, regulations and policies.  Plaintiff in the present case was never employed by DSNY, and Defendants' theory that Plaintiff would have been arrested and then fired is completely speculative.  It is equally possible (and speculative) that had Plaintiff been employed he would not have resorted to possessing an illegal drug with intent to sell.  Defendants' motion to preclude damages after the date of Plaintiff's arrest is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. Plaintiff's request that DSNY be substituted for the City, and that all claims against DSNY be construed as against the City is GRANTED.  Plaintiff shall serve the City and file an affidavit of service as soon as practicable but in any case no later than February 16, 2016.

The Clerk of Court is respectfully directed to close the motion at Docket No. 24.

Dated: February 3, 2016
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**